Plaintiff Lorraine Swogger appeals a summary judgment of the Court of Common Pleas of Mahoning County, Ohio, granted in favor of defendant Mahoning County Board of Commissioners, Gary Kubic, and Kevin Sellards. Appellant assigns four errors to the trial court:
ASSIGNMENTS OF ERROR
 "I. THE TRIAL COURT ERRED IN SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING SAID SUMMARY JUDGMENT TO DEFENDANT.
 "II. THE TRIAL COURT ERRED IN FINDING DEFENDANT, MAHONING COUNTY COMMISSIONERS, NOT RESPONSIBLE FOR ITS EMPLOYEES ACTIONS. [SIC]
 "III. APPELLEE, MAHONING COUNTY BOARD OF COMMISSIONERS, WERE NOT ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW.
 "IV. THE TRIAL COURT ERRED IN DISMISSING PLAINTIFF'S COMPLAINT REGARDING NEGLIGENT INFLICTOR OF EMOTIONS AND DISTRESS BY APPELLEE.[SIC]"
Appellant began her employment with Mahoning County in November of 1995. From the time appellant was hired until January 3, 1997, Joseph Verostko was appellant's immediate supervisor in the Facilities Management Department. Richard Malagisi was the assistant director. After January 3, 1997, Malagisi assumed Verostko's position and became appellant's immediate supervisor.
In May of 1996, Kevin Sellards, the county's Human Resources Director, inquired whether appellant had experienced any behavior on the part of Malagisi that she thought was inappropriate. Appellant responded in writing that she had not found Malagisi out of line or behaving in an unprofessional manner.
Appellant alleged Malagisi began to harass her in November or December of 1996. In December of 1996, appellant told Verostko she was receiving frequent calls from Malagisi, but that she would attempt to handle this rather than report the calls to Kubic, who was responsible for the Facilities Management Department. Appellant later deposed that nothing in the frequent phone calls was particularly inappropriate.
In April of 1997, appellant approached Sellards and informed him she was having a "personal problem." Appellant did not elaborate on the nature of the problem and in fact indicated she was not willing to discuss any specifics. Sellards informed her he would not transfer her to a different department unless she gave him the reason for her request. The two parties discussed possible job openings. In her deposition, appellant later testified Sellards did not know what Malagisi had been doing, but Sellards did know appellant was having a personal problem.
On May 13, 1997, appellant again approached Sellards, and described what Malagisi was doing and saying to her. Appellant testified at her deposition she asked Sellards to transfer her to a different department, and that was all she wanted. Because the county was experiencing a budget crisis, there were very few openings available to appellant. Sellards offered appellant a position with the Building Inspection Department, but appellant rejected the transfer because she believed it entailed a cut in pay.
Sellards' affidavit alleges because appellant had only requested a transfer, Sellards attempted to locate an alternative job for appellant and did not begin any formal investigation of Malagisi. In her deposition, appellant testified Sellards' demeanor was sympathetic. By June, appellant also indicated although she still wanted a transfer, if Malagisi agreed to meet certain conditions, including not addressing her in a demeaning or abusive way, she could continue to work in the Facilities Management Department. Sellards' affidavit alleges Malagisi agreed to the appellant's conditions, and thereafter, the parties' relationship became more professional.
On June 19, 1997, the county's 911 director contacted appellant at Sellards' request, and offered to interview appellant for a position in the 911 department. Appellant interviewed for the position, which was not posted for other persons to bid on until well after her interview. Ultimately appellant was offered the position of administrative assistant in the 911 Department, which would have resulted in a three percent pay raise from her current amount. Appellant rejected the position because she believed a three percent increase in pay was not enough, and in fact, she believed that when she was originally hired, the Facilities Management Department had told her she would receive a larger raise than three percent if she remained with them. Sellards' affidavit alleges that because appellant had turned down the transfer, and in his latest conversation with her she had indicated her relationship with Malagisi was on a more professional footing, Sellards had no reason to believe the situation had reverted back.
In January of 1998, appellant told Sellards she had changed her telephone number and did not wish for Malagisi to know what it was. Sellards told appellant she did not have to give her phone number to Malagisi. On January 25, 1998, a Sunday, appellant found a note on her car parked at her health club. Appellant believed Malagisi was responsible for the note. In response, Sellards immediately re-assigned appellant to the Solid Waste Department, away from Malagisi, initiated an in-house investigation, and referred the note to the Mahoning County Sheriff's Department. The sheriff's department could find no evidence linking Malagisi with the note. Appellant reported for work in the Solid Waste Department on January 27, 1998. She did not go to work for the remainder of the week, and on February 2, 1998, returned to the Facilities Management Department. Appellant admits she did so without Sellards' knowledge or approval. When Sellards learned appellant was back at work in Facilities Management Department, he asked her for written confirmation that Malagisi was no longer bothering her, because he wanted to confirm in writing it was appellant's choice to return to the same department where Malagisi worked.
At the conclusion of the in-house investigation into appellant's complaints about Malagisi, the parties appeared before a hearing officer. The hearing officer's report found that Malagisi did not sexually harass appellant, but recommended that Malagisi be given a written reprimand and suspended for two or three days without pay for violations of other county rules. The county deemed the hearing officer's recommendation insufficient, and suspended Malagisi for fifteen days without pay.
In June of 1998, appellant's position was abolished and the reason cited was the county's budgetary crisis. At appellant's State Personnel Board of Review appeal, appellant was given the opportunity to present evidence she was dismissed for other reasons rather than the financial reasons cited by the county. The State Personnel Board of Review filed the decision which upheld the county's decision to eliminate appellant's position.
The county alleges at the time in question, it had a sexual harassment policy, which was given to its employees. Appellant conceded she had received the policy, and was aware Sellards was the person to whom she should report harassment.
 I II
In her first assignment of error, appellant argues the trial court was incorrect in finding there was no genuine issue of any material fact relevant to the case. Appellant urges the summary judgment was inappropriate, and the matter should be remanded to the trial court for the fact finder to determine the facts.
Civ.R. 56 (C) states in pertinent part:
"(C) Motion and proceedings
 "The motion shall be served at least fourteen days before the time fixed for hearing. The adverse party, prior to the day of hearing, may serve and file opposing affidavits. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."
A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts, Hownshell v. AmericanStates Insurance Company (1981), 67 Ohio St.2d 427. A trial court may not resolve ambiguities in the evidence presented, Inland Refuse TransferCompany v. Browning-Ferris Industries of Ohio, Inc. (1984),15 Ohio St.3d 321. This court will review a summary judgment using the same standard as the trial court, Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35.
Appellant alleges she set forth a prima facia case of harassment. She argues her direct supervisor, Richard Malagisi, attempted to use his position as a means to control appellant's social life. Appellant alleges Malagisi told her if she reported his behavior, she would be fired. Appellant also testified in her deposition, she believed Malagisi physically threatened her.
The trial court sustained Malagisi's motion to dismiss the complaint as regards to him on October 20, 1998. Appellant did not appeal the dismissal, and Malagisi is no longer a party to this action. Thus, appellant's sole theory of recovery is based upon the county's vicarious liability for the behavior of its employee.
In Hampel v. Food ingredients Specialties, Inc. (2000),89 Ohio St.3d 169, the Ohio Supreme Court set forth the elements a plaintiff must establish to substantiate a claim of hostile environment and sexual harassment. First, the plaintiff must show the harassment was unwelcome, and secondly, that it was based upon sex. Thirdly, the plaintiff must show the harassing conduct was sufficiently severe or pervasive as to affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment. Finally, the plaintiff must demonstrate either the harassment was committed by a supervisor, or in the alternative, that the employer through his agents, or supervisory personnel, knew or should have known the harassment was taking place, and the employer failed to take immediate appropriate corrective action, Hampel at 176-177, citations deleted.
Appellees argue the record demonstrates appellant's position with the county was abolished in June 1998, by an upper level official, because of budgetary constraints. Appellant offered no evidence showing the alleged harasser, Malagisi, played any role in the decision to eliminate her position. A number of employees besides appellant were laid off at the same time.
Here, the record shows although appellant spoke on several occasions to appellee Sellards, initially she indicated she would attempt to resolve the matter on her own. When appellant apparently concluded this was not feasible, and sought assistance from her supervisor, the only remedy she sought was a transfer to another department. In response, appellees located what they considered to be a suitable transfer, and appellant did actually go to work in that department, but only very briefly. Appellant voluntarily returned to the department where Malagisi worked. It is also apparent that it was not until May 13, 1997, that appellant reported the details of her problem with Malagisi. Until she did so, appellees were not required to take immediate and appropriate corrective action. Upon learning of the exact nature of the situation, Sellards began to arrange for a transfer. Thereafter, appellant and Malagisi were able to remedy the situation between them, and appellant advised Sellards things were satisfactory.
We find reasonable minds could not differ on the issue of whether the employer took immediate appropriate corrective action at the time it knew or should have known of the harassment.
The first and second assignments of error are overruled.
 III
In her third assignment of error, appellant argues the trial court erred as a matter of law in entering summary judgment on behalf of the County Board of Commissioners. In Kerans v. Porter Paint Company (1991),61 Ohio St.3d 424, the Ohio Supreme Court found where the evidence in the record suggests an employee has a past history of sexual harassment about which the employer knows or should have known, summary judgment should not be granted in favor of the employer on a workplace sexual harassment claim, even if the employee's actions did not further the employer's business. Appellant argues because appellees originally sought her out to determine if she was having problems working with Malagisi, they were already on notice Malagisi has a propensity to harass employees, and therefore should be liable for permitting him to continue these activities.
Appellees respond Kerans, supra, created a common law tort of sexual harassment, but did not set out the elements of a cause of action. Thereafter, subsequent courts reinterpreted and applied statutory and case law in such a way that Kerans must be read to apply only in situations where the appellant had otherwise set forth a prima facia case of sexual harassment.
Finally, appellees argue appellant is collaterally estopped from challenging the county's motives in abolishing appellant's position. Appellant pursued an appeal to the State Personnel Board of Review, and the Board returned a finding there was a valid, non-discriminatory reason for the abolishment of her position. In Wilson v. Board of Stark CountyCommissioners (November 5, 1990), Stark Appellate No. 8159, unreported, this court found an administrative determination results in collateral estoppel of a civil action if several conditions are satisfied: 1) the Board was acting in a judicial capacity, 2) the Board reviewed and resolved the factual disputes, and 3) both parties had a full and fair opportunity to present their case, and to seek review of any adverse findings, Wilson at 2, citations deleted.
We find the trial court did not err as a matter of law in entering the summary judgment in favor of appellees. Accordingly, the third assignment of error is overruled.
 IV
In her fourth assignment of error, appellant argues the trial court should not have dismissed her cause of action for negligent infliction of emotional distress. Appellees respond that Ohio courts have not recognized a separate tort of negligent infliction of emotional distress in the employment context. Further, in her deposition appellant was asked on several occasions how her complaints had been received by appellees, and she consistently characterized the behavior as sympathetic, supportive, and concerned. In light of our findings, supra, that appellees took immediate and appropriate corrective action upon learning of the harassment, this court cannot find the record supports appellant's claim for negligent infliction of emotional distress.
The fourth assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.
By Gwin, P.J.,
Wise, J., and Edwards, J., concur.